IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LUCAS WENDEL and CHARLOTTE
WENDEL,

    *Plaintiffs,*

vs.

MORTON BUILDINGS, INC.,

    *Defendant.*

Case No. 15-1127-EFM

**MEMORANDUM AND ORDER**

Plaintiffs Lucas Wendel and Charlotte Wendel bring suit against Defendant Morton Buildings, Inc. They claim that Defendant terminated them in retaliation for Lucas Wendel filing a workers' compensation claim. Defendant now seeks summary judgment. Because the Court finds that there are genuine issues of fact, the Court denies Defendant's motion.

### I.    Factual and Procedural Background[1]

Defendant Morton Buildings constructs commercial and institutional buildings. It is headquartered in Morton, Illinois, but it has an office in Garden City, Kansas. Plaintiff Charlotte Wendel began working full time for Defendant in Garden City in May 1997. Her original job title was Secretary, but it was later changed to Construction Center Administrator. Charlotte

---

[1] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.

Wendel's son, Plaintiff Lucas Wendel, began working for Defendant on August 12, 2013. He was one of two crew foreman in Garden City, Kansas. The other crew foreman was Ryan Snodgrass.

Morton Buildings' Garden City office is managed by Construction Center Manager Lavern Durst. He has been the manager for nine years. Donnie Hizar is the Area Crew Supervisor overseeing crew operations and was Lucas's supervisor.

On August 22, 2014, Lucas was working on a crew in rural Ford County.[2] The foreman on the crew was Snodgrass. Lucas noticed that his back was hurting after he adjusted some lowers, and he told Snodgrass about it.[3] The pain in Lucas's back was off and on for a couple of weeks. On September 18, he was on a roof pulling up steel, and the pain started radiating down into his leg. By the end of the day, Lucas could hardly walk.

On September 23, 2014, Lucas reported for duty but was physically unable to work.[4] Durst allowed Lucas to have time off from work to seek medical attention although Lucas had no remaining paid time off. Later that morning, Lucas applied for workers' compensation benefits.

---

[2] Defendant objects to Lucas's and Charlotte's affidavits and seeks to strike the affidavits (and the facts contained in the affidavits) on the basis that they are self-serving, conclusory, and contain hearsay statements. The Court will not strike these affidavits as they contain Plaintiffs' testimony relating to the issues in this case. Defendant appears to complain that these facts were not brought out in deposition. Fed. R. Civ. P. 56(c)(1)(A) provides, however, that a party may support a fact by citing to an affidavit.

Defendant also objects and seeks to strike Walter Craig's affidavit because this individual was never disclosed as a potential witness. None of the information in Craig's affidavit is relevant to the Motion for Summary Judgment. Thus, Defendant's objection is irrelevant at this point.

[3] The parties disagree whether Snodgrass was the appropriate individual to be considered Lucas's supervisor. It is undisputed, however, that Lucas did tell Snodgrass that his back was hurting on August 22.

[4] Defendant asserts that Lucas was demoted that day but it had nothing to do with Lucas's injury or because Lucas was filing for workers' compensation benefits. Lucas claims that nobody told him that he was demoted on that day, and he only found out about it after this litigation was filed. It is not clear whether Lucas's alleged demotion is relevant.

Lucas's application claimed that he was injured on the job twenty-nine days earlier, on August 22, 2014. Morton Buildings assists employees in filing workers' compensation claims through its Construction Center Administrators. Employees file approximately 200 claims for workers' compensation each year. Morton Buildings' policy requires employees to report workplace injuries within twenty-four hours of their occurrence.

The Construction Center Administrator at the Garden City facility was Charlotte, Lucas's mother. As part of Charlotte's job responsibilities, she was responsible for filling out injury reports and workers' compensation forms for employees. When a claim for workers' compensation benefits is filed, Morton Building's policy requires that the employee's supervisor be notified of the accident and the filing of benefits.

Lucas received the workers' compensation form from Charlotte. Lucas and Charlotte had a question as to the appropriate date for when the accident happened. Lucas called Tonya Parker, Morton Building's workers' compensation coordinator, and explained the situation to her. Parker helped Lucas determine the injury date.

On September 23, 2014, Charlotte submitted Lucas's claim to Defendant's corporate office in Morton, Illinois.[5] Defendant has an existing policy related to falsification of documents and investigates fraudulently filed workers' compensation claims. Each workers' compensation claim is reviewed in the corporate office by Jason Shallenberger, Defendant's national Health and Safety Coordinator and Compliance Manager. Shallenberger is also the contact person for all Kansas workers' compensation claims.

---

[5] The parties dispute whether Charlotte informed Lucas's supervisor of the injury and the filing of benefits. This issue will be discussed below.

Shallenberger flagged Lucas's claim when it came into the corporate office. He thought the injury and reporting dates were problematic. Lucas's claim did not match up with any reported or documented workplace accident or injury. Shallenberger contacted the Garden City office to initiate an investigation of the claim. Shallenberger interviewed and obtained statements from Durst, Hizar, and Snodgrass regarding the claimed injury. Shallenberger also contacted Sue Nizzia in Defendant's Human Resources Department. During the course of Shallenberger's investigation, Travelers Insurance (the insurer) interviewed Lucas regarding the workers compensation claim on September 23 or 24, 2014. Lucas's workers' compensation claim was denied by Travelers Insurance because his injury occurred more than twenty days prior to his report. Travelers' Insurance denial letter arrived at the Garden City office on October 3, 2014.

On September 30, 2014, an Ethics Committee meeting was convened and attended by Janet Getz (President of Defendant), Susan Elizabeth (the CFO), Nizzia, Shallenberger, and Rick Fischer (Regional Supervisor for the territory that includes Kansas) to determine if potentially fraudulent conduct had occurred with respect to Lucas's workers compensation claim. That same day, the decision to terminate Charlotte and Lucas was made. Morton Buildings directed Fischer to handle the terminations. On Monday, October 6, 2014, Durst terminated Charlotte and Lucas.[6] Lucas's letter stated that he was being terminated effective immediately due to violation of company policy. Charlotte's letter stated that she was being terminated effective immediately due to her services no longer being needed with Defendant.[7]

---

[6] Defendant asserts that Fischer was going to handle the terminations but also asserts that Durst terminated Lucas and Charlotte. The termination letters were signed by Durst.

[7] Lucas's and Charlotte's termination letters are dated October 2.

Plaintiffs filed suit on April 20, 2015, on the basis of diversity, and asserted that Defendant wrongfully fired them for the filing of Lucas's workers compensation claim in violation of Kansas law. Defendant now seeks summary judgment.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[8] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[9] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[10] If the movant carries this initial burden, the nonmovant that bears the burden of persuasion at trial may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[11] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[12] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[13]

---

[8] Fed. R. Civ. P. 56(a).

[9] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[10] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[11] *Id.* (citing Fed. R. Civ. P. 56(e)).

[12] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[13] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

### III.  Analysis

This case arises from the Court's diversity jurisdiction and thus the substantive law of Kansas is applicable.[14]  In Kansas, it is unlawful to terminate an individual in retaliation for filing a workers' compensation claim.[15]  Kansas courts apply the *McDonnell Douglas* burden-shifting framework to retaliatory discharge claims.[16]  Under this familiar framework, the plaintiff must establish a prima facie case.[17]  If the plaintiff does so, the burden then shifts to the defendant to identify a non-retaliatory reason for the termination.[18]  The burden then shifts back to the plaintiff to demonstrate a genuine issue of material fact as to whether the defendant's reason is pretext for unlawful retaliation.[19]

#### A.  Prima facie case

A prima facie case of retaliatory discharge requires a plaintiff to demonstrate  "(1) a claim for worker's compensation benefits or an injury that might support a future worker's compensation claim; (2) the employer knew of the claim or injury; (3) the employer discharged the plaintiff; and (4) a causal connection between the claim (or injury) and the discharge."[20]  In this case, there are two Plaintiffs.  Lucas is the individual who filed for workers' compensation benefits, and Charlotte is his mother.  Defendant agrees that Kansas law recognizes "that a parent-child relationship falls within the ambit of protection from retaliatory discharge for filing

---

[14] *See Macon v. United Parcel Serv.*, *Inc.*, 743 F.3d 708, 713 (10th Cir. 2014).

[15] *Foster v. AlliedSignal, Inc.*, 293 F.3d 1187, 1192 (10th Cir. 2002).

[16] *Macon*, 743 F.3d at 713.

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

a workers' compensation claim."[21]  For purposes of summary judgment, Defendant concedes that both Plaintiffs can establish a prima facie case.

### B.  Pretext

Plaintiffs have established a prima facie case of retaliation and thus the burden shifts to Defendant to articulate a legitimate, nonretaliatory reason for Plaintiffs' terminations.  Defendant asserts that it terminated Lucas and Charlotte for being dishonest and failing to comply with Defendant's policies.  Thus, Defendant has satisfied its burden of articulating a nonretaliatory reason for Plaintiffs' discharge.

As a result, the burden of persuasion shifts back to Plaintiffs to demonstrate a genuine dispute of material fact as to whether Defendant's stated reason is unworthy of belief.  To avoid summary judgment after an employer has offered a reason for termination, "the employee must assert specific facts establishing a triable issue as to whether the employer's reason for the discharge is a mere cover-up or pretext for retaliatory discharge."[22]  To demonstrate pretext, an employee must show more than mere conjecture that the employer's reason for termination is insufficient.[23]  Generally, an employee can show pretext "by such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."[24]

---

[21] *See Madrigal v. IBP, Inc.*, 811 F. Supp. 612, 615 (D. Kan. 1993) (citing *Marinhagen v. Boster, Inc.*, 17 Kan. App. 2d 532, 542, 840 P.2d 534 (1992)).

[22] *Bracken v. Dixon Indus., Inc.*, 272 Kan. 1272, 1276, 38 P.3d 679, 682 (2002).

[23] *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

[24] *Lobato v. New Mexico Env't Dept.*, 733 F.3d 1283, 1289 (10th Cir. 2013) (quoting *Morgan*, 108 F.3d at 1323).

The question is whether the employer honestly believed its stated reason and acted in good faith on that belief.[25] The Court does not ask whether the reason was wise, fair, or correct.[26] To determine whether the employer honestly believed its explanation, the Court examines the facts as they appear to the person making the decision, not the plaintiff's subjective evaluation.[27]

Ultimately, the employee's burden is to establish retaliation by a preponderance of the evidence, but the evidence itself must be clear and convincing in nature.[28] An employee may show pretext in a variety of ways. For example: (1) by showing that the stated reason is false, (2) by showing that the employer acted contrary to a written company policy, or (3) or by showing that the employer acted contrary to an unwritten company policy or practice.[29] At the summary judgment phase, the Court needs only to determine whether the evidence Plaintiffs present, viewed in the light most favorable to them, could allow a reasonable jury to find that Defendant's reasons were pretextual.[30]

Here, there appear to be questions of fact as to the legitimacy of Defendant's reason for terminating both Lucas and Charlotte. Defendant asserts that Lucas was dishonest and did not follow the policy to report any workplace injury within twenty-four hours, raising the possibility of a fraudulent workers' compensation claim. Lucas states that he did report his injury to Snodgrass, whom he believed was his supervisor, on the day he was injured. It is unclear from

---

[25] *Id*.

[26] *Id*.

[27] *Id*.

[28] *Foster*, 293 F.3d at 1194–95 (citing *Ortega v. IBP, Inc.*, 255 Kan. 513, 528, 874 P.2d 1188, 1198 (1994)).

[29] *Macon*, 743 F.3d at 714.

[30] *Potter v. Synerlink Corp.*, 562 F. App'x 665, 674–75 (10th Cir. 2014).

the facts as to whom Lucas was required to report his injury and thus it is unclear whether he appropriately reported his injury within twenty-four hours.[31] Accordingly, Lucas has demonstrated that there are questions of fact as to the Defendant's reason for termination.

Defendant asserts that Charlotte was terminated for being dishonest and failing to comply with its policies and procedures. These facts, however, are also disputed. Defendant asserts that Charlotte failed to notify Durst when she filed the workers' compensation claim. Charlotte claims that she did notify Durst, as well as Hizar (Area Crew Supervisor). Defendant asserts that Charlotte falsely indicated that Snodgrass was Lucas's supervisor and failed to indicate that Hizar was Lucas's supervisor. In reviewing the evidence submitted to the Court, the form specifically provides that Snodgrass was the foreman and that Hizar was the Area Supervisor. Thus, the written document does not support Defendant's contention that Charlotte falsely filled out the workers' compensation form. Finally, when terminating Charlotte, Defendant told her that her services were no longer needed. Only after she filed this suit did she learn that Defendant's alleged reason for termination was for dishonesty and failing to comply with its procedures and policies.

There are weaknesses, inconsistencies, and contradictions in Defendant's alleged reason for termination. Thus, the Court finds that Plaintiffs have directed the Court to evidence raising

---

[31] The Court is cognizant that it does not determine whether Defendant's reason was wise or fair and must look at the facts as they appear to the person making the decision. However, Defendant's purported facts are at issue. At one point, Defendant states that Lucas did not report the injury or have the injury verified by Durst (Construction Center Manager). Defendant, however, never states that Lucas must report the injury to Durst. Instead, Defendant states that Lucas must report his injury to his supervisor, and Defendant asserts that Lucas's supervisor was Hizar (Area Crew Supervisor). Lucas provides testimony that he believed Snodgrass was the individual who was his supervisor on the date he was injured. In addition, the evidence demonstrates that Lucas told Durst of his back pain because Durst is the individual who authorized Lucas to have time off from work to seek medical attention on September 23.

genuine issues of material fact as to whether Defendant's reason for termination is pretext for unlawful retaliation. Accordingly, the Court denies Defendant's Motion for Summary Judgment.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 26) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Oral Argument (Doc. 31) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 17th day of May, 2016.

*Eric F. Melgren*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE